UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| vs. | Case No. 25-CR-10406-JEK |
| JIMMY FU, | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through the undersigned Assistant United States Attorneys, respectfully submits this Sentencing Memorandum.  The Defendant, Jimmy Fu, pled guilty to an information that charged one count of operating an unlicensed money transmitting business, in violation of 18 U.S.C. §§ 1960(a) and 2.  The Government agrees with the guideline calculation included in the Presentence Investigation Report ("PSI").  For the reasons to be discussed in more detail at the sentencing hearing, the Government is recommending a sentence 25% below the guidelines, of 27 months.

### I.    BACKGROUND

This investigation began when a pill press operation was located in the District of Massachusetts that was fulfilling orders for at least two online pharmacies (collectively, the "Websites").  A search of this pill press location revealed three-industrial size pill presses, hundreds of pills, and over twelve kilograms of powder that tested positive for fentanyl.  As a result of the search, customers of the Websites were identified who ordered Adderall, a Schedule II controlled substance, and Modafinil, a Schedule IV controlled substance, online through these Websites, which represented themselves as legitimate online pharmacies operating overseas. However, in reality, the customers' pill orders would have been filled by the pill press location in the District of Massachusetts. The customers would not have known that they were receiving

1

counterfeit pills manufactured by a pill press run out of an apartment, instead of by a legitimate establishment, since the pills that were created had markings consistent with real pharmaceutical pills, but contained harmful ingredients, including fentanyl.

Jimmy Fu was the owner and operator of an unlicensed money transmitting business, Axson, that processed payments for these illicit online pharmacies. Without the Defendant, these businesses would not have been able to reach their customer base or collect payments in the United States. The Defendant processed payments for the Websites since at least as early as 2021 continuing through the date of his arrest in 2024. He used multiple different accounts across a variety of different banks. The Defendant would charge various fees associated with processing the payments and then wire the proceeds of the sales, less his fees, to overseas bank accounts.

The online pharmacies advertised for sale prescription drugs, including drugs like Xanax, phentermine, Adderall, tramadol, and Ambien that either are themselves controlled substances, or that contain controlled substances as an active ingredient. Each of these pills requires a prescription. During the investigation into these online pharmacies, law enforcement conducted approximately eighteen undercover ("UC") purchases from these online pharmacies and their representatives that were processed by Axson. The UC was never asked for a prescription, nor did the UC provide one. Axson reached out to confirm each payment and during some of these conversations, the undercover ("UC") discussed the types of pills (such as Adderall, for example) that the UC ordered through the online pharmacies.

Ultimately, in connection with each of the purchases processed by Axson, the UC received pills that were imprinted with markings consistent with genuine pharmaceutical pills, including Adderall, phentermine, and Xanax. However, each of the UC orders that was lab-tested was counterfeit. For example, in one instance, law enforcement ordered 60 Adderall pills that tested

2

positive for methamphetamine and caffeine.  In another instance, law enforcement ordered 90 Adderall pills but received pills that contained no Active Pharmaceutical Ingredient ("API").  This is obviously incredibly serious, as these pills appeared to be legitimate, however, they never contained the correct active ingredients for the intended pills.

During this investigation, law enforcement got a search warrant for the Defendant's Apple account.  Among other things, law enforcement discovered the following text exchange with a customer:



In the exchange above, a customer says that they ordered "Adderall" but received "pressed meth."

Later in the investigation, law enforcement set up an undercover account to use Axson's services to process payments for an undercover online pharmacy.  The UC advised the Defendant

that the online pharmacy was selling pharmaceutical drugs.  Law enforcement then entered sales into Axson's merchant site for Adderall purchases associated with a fictitious customer.

Then, on May 16, 2024, the UC received a call from the Defendant.  During this call, which was recorded, the Defendant told the UC not to enter "Adderall" into the sales data, but rather to input "health products" instead because the Defendant did not know whether the UC had a license and Fu did not want anyone to "get in trouble."  The Defendant confirmed that he had changed the last orders from Adderall to "health products" on his end.  The Defendant further indicated that this was a grey area so it would keep them out of trouble.  A review of the UC account revealed that, in fact, the "Adderall" that the UC had inputted into the merchant site associated with the fictitious sales, was changed to "FHP."

Ultimately, since January 2021, the Defendant received approximately $11.5 million into Axson bank accounts from third-party individuals and entities.  Many of these checks included various businesses indicating where the payment should be directed.  During this same period, approximately $8.5 million was disbursed from Axson bank via outgoing international wire to various business entities, including $5.1 million that was sent to two businesses associated with the Websites, based in India.

## II.    ARGUMENT

The Government is recommending a sentence of 27 months, which represents a 25% reduction from the low-end of the guidelines in this case, which are 37-46 months.  This is an appropriate sentence that is reflective of the § 3553(a) factors, including the seriousness of the Defendant's conduct, and the need for both punishment and general deterrence.

The Government credits that the Defendant moved to the United States from China and successfully built a business while largely living a law-abiding life.  However, it is important to

keep in mind that this scheme whereby the Defendant processed payments for the Websites lasted years. It was not one isolated decision that the Defendant made, it was a choice that he made over a lengthy period of time to engage in an unlicensed money transmitting business and accept payments on behalf of businesses that he knew were operating outside of the confines of the law. What's more, is that he knew, as outlined above, that these pills were dangerous. The photograph above is the starkest example of that, where a customer indicated that he ordered Adderall but received pressed meth in the mail. While the Defendant's role was confined to confirming, processing, and accepting payments from customers for the Websites, this role was imperative to the operation of these businesses, allowing them to function in the United States and to make millions of dollars. The Defendant's actions, in this way, contributed to a very serious health crisis where thousands of customers ordered pills online and received counterfeit pills in return. This is obviously an incredibly dangerous business where customers can order Adderall but receive methamphetamine in return. The conduct here is extremely serious, and it should be punished accordingly.

There is also a need for general deterrence in these types of cases where businesses or individuals may believe that because they are only processing payments without the requisite license and are not themselves engaging in the underlying criminal activity of producing counterfeit pills, or setting up pill press locations, or fulfilling pill orders, that they should not be punished. However, that outcome ignores the vital and important role that these United States-based businesses play in helping these overseas actors pollute and skirt our healthcare system by inserting these counterfeit pills into our lives and our homes and putting our communities at risk.

**CONCLUSION**

For the foregoing reasons, the Government asks the Court to impose the requested sentence of twenty-seven months because it is sufficient, but not great than necessary, to serve the goals of sentencing.

Respectfully submitted,

UNITED STATES OF AMERICA,
LEAH B. FOLEY
United States Attorney

*/s/ J. Mackenzie Duane*
J. Mackenzie Duane
Leslie Wright
Assistant U.S. Attorneys

Date:   March 15, 2026

6

## **CERTIFICATE OF SERVICE**

Undersigned counsel certifies that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).


/s/ J. Mackenzie Duane
J. Mackenzie Duane
Assistant U.S. Attorney

Dated: March 15, 2026